ANDRÉ BIROTTE JR.
United States Attorney
DOUGLAS F. McCORMICK
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office
ANNE C. GANNON (Cal. Bar No. 214198)
Assistant United States Attorney
    411 W. Fourth Street, 8th Floor
    Santa Ana, CA 92701
    Telephone: (714) 338-3548
    Facsimile: (714) 338-3561
    E-mail: Anne.Gannon@usdoj.gov

LANNY A. BREUER
Assistant Attorney General
United States Department of Justice
Criminal Division
JAMES SILVER
Trial Attorney
Child Exploitation & Obscenity Section
    1400 New York Ave., NW - Ste. 600
    Washington, DC 20530
    Telephone: (202) 353-2057
    Facsimile: (202) 514-1793
    E-mail: James.Silver@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) No. SA CR 07-163-AHS |
| | ) |
| Plaintiff, | ) <u>SENTENCING MEMORANDUM</u> |
| | ) |
| v. | ) |
| | ) |
| WILLIAM NEWTON RUDD, | ) |
| | ) |
| Defendant. | ) |
| | ) |

    Plaintiff United States of America, as represented by and through the United States Attorney's Office for the Central District of California ("USAO") and the Child Exploitation & Obscenity Section, Criminal Division, United States Department of Justice ("CEOS"), having received and reviewed the presentence

report for William Newton Rudd in the above matter, submits the government's response and sentencing position.

A.     FACTUAL AND PROCEDURAL HISTORY

    1. Plea Agreement

On October 30, 2009, defendant William Newton Rudd ("defendant") pleaded guilty pursuant to a Federal Rule of Criminal Procedure Rule 11(c)(1)(C) binding plea agreement to the single count indictment which charged him with engaging in illicit sexual conduct in foreign places, in violation of Title 18, United States Code, Section 2423(c).  (PSR ¶¶ 1-3)[1].  In the factual basis, defendant admitted that he traveled in foreign commerce, including to the People's Republic of Bangladesh (hereinafter "Bangladesh"), and engaged in illicit sexual conduct with a minor, "among other things, intentionally touched the unclothed genitalia of J.S. with the intent to arouse and gratify the sexual desires of himself, the minor, or other persons." (Plea Agreement ¶ 11).  Defendant also stipulated that "[t]wo of the three children declared that [defendant] had touched their genitalia but the third child adamantly denied that [defendant] had ever touched him inappropriately." (Id.).

In the plea agreement, the parties agreed that the 2003 Sentencing Guidelines are applicable in this case.  (Plea Agreement ¶ 14).  In addition, the parties agreed that an appropriate disposition of this case includes a sentence of 78 months imprisonment, the low end of offense level 28 and criminal history category I.  (Id. at ¶ 15).  The stipulated offense level

---

[1] "PSR" refers to the presentence report prepared by the United States Probation Office.

2

of 28 was based on a base offense level of 27 (USSG § 2G2.1(a)), a four-level increase because a victim was under 12 years of age (USSG § 2G2.1(b)(1)(B)), and a three-level reduction for acceptance of responsibility (USSG § 3E.1.1(b)).  (Plea Agreement ¶ 14).  Defendant also agreed to pay up to $15,000 in restitution to be paid at the time of sentencing based on his ability to pay. (Plea Agreement ¶ 15).  The parties have no agreement as to the length of supervised release.  (Id.).

    2.   <u>Presentence Report</u>

The Probation Office disagreed with the parties' stipulated guideline calculation citing the special instruction that provides for a multiple count adjustment if the offense involved more than one minor "as if the exploitation of each minor had been contained in a separate count on conviction."  (PSR ¶ 36 citing USSG § 2G2.1(c) (2003)).  The PSR calculated the offense level for five groups, one for each victim it identified.[2]  The highest offense level for any group prior to the reduction for acceptance of responsibility was 31, the same as calculated by the parties.  (PSR ¶ 76).  The PSR then added five levels for the multiple counts adjustment based on a total number of five units.[3]  (PSR ¶¶ 70-77 citing USSG § 3D1.4)  With a three-level reduction for acceptance of responsibility, the total offense level in the PSR is 33.  The PSR reflects that defendant's

---

[2] The government notified the Probation Office that the PSR identified S.L. (PSR ¶¶ 23, 58-63) and A.L. (PSR ¶¶ 24-25, 64-69)as two minors when they are, in fact, the same person.

[3] The multiple counts adjustment provides for a four-level, as opposed to five-level, increase if there are 3½ - 5 units. Therefore, even if the multiple count adjustment applies, the total offense level should be reduced to 32.  See USSG § 3D1.4.

criminal history category is I.  (PSR ¶¶ 86-87).  Thus, the corresponding sentencing range would be 135-168 months imprisonment.  (Exhibit A, attached hereto).  Probation recommends a sentence of 120 months imprisonment.

      3. <u>Government's Response to Presentence Report</u>

      The government has no objection to the calculation of defendant's criminal history category.  With the exception of the issue pertaining to the number of victims, the fact S.L. and A.L. are the same person as discussed in footnote 2, the government does not have any factual objections to the PSR.  The government disagrees with the PSR's offense level calculation, specifically it opposes the application of the multiple count adjustment. While the investigative records reflect reports of additional sexual contact with minors, defendant only admitted to engaging in illicit sexual conduct with one minor victim, J.S.  Therefore, defendant's offense level should not be increased based on additional contested conduct.  The government contends that the stipulated offense conduct and the conditions in Bangladesh when analyzed using the sentencing factors set forth at 18 U.S.C. § 3553(a) support the 78 month term of imprisonment agreed to by the parties.  The pretrial resolution of this case prevented the need for several teenage boys to travel from their home to testify in court regarding their abuse.  The public disclosure of this homosexual abuse may have exposed the victims to additional negative repercussions in their home country.

B.    <u>POVERTY IN BANGLADESH</u>

      Bangladesh is one of the poorest countries in the world. The United Nations includes Bangladesh as one of the least

4

developed countries, a list comprised of those countries which fit the United Nations' criteria of (1) lowest gross national income per capita; (2) "human assets weakness," consisting of (a) widespread malnutrition, (b) high child mortality, and (c) low school enrollment and literacy; and (3) "economic vulnerability," or vulnerability to natural disasters.  U.N. Conference on Trade and Development, Least Developed Countries Report 2009, "What are the least developed countries?," http://www.unctad.org/en/docs/ldc2009_en.pdf.

The United States Department of State concurs, calling Bangladesh "one of the world's poorest and most densely populated countries."  Bureau of Public Affairs, U.S. Dep't of State, Background Note: Bangladesh (2009), http://www.state.gov/r/pa/ei/bgn/3452.htm.  Bangladesh has a population of 150 million--roughly half that of the United States--but only the land area of Wisconsin.  Id.  Roughly 10% to 15% of the population faces serious nutritional risk.  Id.  Natural calamities such as floods, tropical cyclones, tornadoes, and tidal bores affect the country almost every year.  Id.

Within Bangladesh, the southwestern region is one of the poorest and most vulnerable to natural disaster, especially cyclones.  Jonathan Watts, No food, no clothes, no home. The poor who have lost everything, The Guardian, Nov. 23, 2007, http://www.guardian.co.uk/world/2007/nov/23/naturaldisasters.internationalaidanddevelopment.  These powerful storms literally wash the local inhabitants out to sea.  Id.

C.  **DEFENDANT SENTENCE SHOULD INCLUDE $15,000 IN RESTITUTION**

Sentencing courts have broad discretion in ordering restitution in child exploitation cases. See United States v. Doe, 488 F.3d 1154 (9th Cir. 2007). The Mandatory Restitution for Sexual Exploitation of Children Act, 18 U.S.C. § 2259, provides that an "order of restitution under this section shall direct the defendant to pay the victim (through the appropriate court mechanism) the full amount of the victim's losses as determined by the court." The full amount of losses includes, "(A) medical services relating to physical, psychiatric, or psychological care; (B) physical and occupational therapy or rehabilitation; (C) necessary transportation, temporary housing, and child care expenses; (D) lost income; (E) attorneys' fees, as well as other costs incurred; and (F) any other losses suffered by the victim as a proximate result of the offense." 18 U.S.C. § 2259(b)(3)(A)-(F). This section is "phrased in generous terms, in order to compensate the victims of sexual abuse for the care required to address the long term effects of their abuse." United States v. Laney, 189 F.3d 954, 966 (9th Cir. 1999). A sentencing court may award costs for alternative education programs and vocational training in an effort, "to make [] victims whole again." Doe, 488 F.3d at 1162.

In September 2009 when federal authorities interviewed minor victim, P.N., he said that before he met defendant, he did well in school, but that defendant "spoiled" him with gifts. P.N. withdrew from school when his father's fishing business began to struggle. (Exhibit B, attached hereto). P.N. began helping his father, but failed to earn a substantial amount of money. For

6

approximately the last 8 months, P.N. has worked as an apprentice on electrical wiring in high-rise buildings for Hyder Ali Traders in Dhaka, the capital of Bangladesh.  The company pays P.N. about $50.00 USD per month, and provides him free lodging.  P.N. sends most of this sum to his father, and spends the balance for food. P.N. would like to obtain vocational education in the electrical trade.  Because P.N. has not finished the 10th grade, he cannot enroll in government vocational schools.  Thus, P.N. must pursue vocational education from private institutions.

The brothers J.S. and N.S. are currently enrolled in school, and wish to continue with their education.  (Exhibit C, attached hereto).  J.S. is now in the 11th grade, and requires approximately $1,625 to complete the 12th grade.  N.S. is now in the 10th grade and requires about $2,544 to complete both 11th and 12th grade.  Both boys want to obtain 4-year university degrees, which cost approximately $15,382 per person.

Since tropical cyclone Sidr struck Bangladesh in late 2007, agents have been unable to locate victim L.S.

The United States has conferred with defendant's wife, and she has agreed to not oppose defendant's transferring of $15,000 in assets for the purposes of victim restitution.[4]  Robb Evans & Associates who acts as a court-appointed receiver in securities fraud cases, has agreed to provide its services pro bono and act as the trustee for any restitution account.  The government will provide the court with a proposed order detailing the payment and

---

[4] The government has also conferred with defendant's wife's divorce attorney, who has agreed to move to partially lift an asset freeze placed on defendant's account by the Orange County Superior Court.

7

management of any restitution amount.

In light of the fact that victim L.S. has been missing since 2007, the government proposes that each remaining victim, J.S., N.S., and N.P., receive an equal share of $5,000 in restitution.

D.   LIFE TERM OF SUPERVISED RELEASE

Under 18 U.S.C. § 3583(k), the maximum term of supervised release for certain sex offenses, including violations of 18 U.S.C. § 2423, is life.  The Sentencing Guidelines, moreover, recommend imposition of the maximum term for any defendant who has committed a sex offense: "[i]f the instant offense of conviction is a sex offense, the statutory maximum term of supervised release is recommended."  USSG § 5D1.2(c) (2003). Application Note 1 to Section 5D1.2 defines engaging in illicit sexual conduct in foreign places as set for in Chapter 117 of the United States Code, Title 18 as a sex offense.  Thus, the imposition of lifetime supervised release is in accordance with the express recommendation of the Guidelines.[5]

---

[5]   In fact, this recommendation was directly inserted into the Guidelines by Congress reflecting Congress's policy determination that lifetime supervised release terms are warranted for sex offenders.  See USSG § 5D1.2(c).

The legislative history to 18 U.S.C. § 3583(k) notes the:

> long-standing concerns of federal judges and prosecutors regarding the inadequacy of the existing supervision periods for sex offenders, particularly the perpetrators of child sexual abuse crimes, whose criminal conduct may reflect deep-seated aberrant sexual disorders that are not likely to disappear within a few years of release from prison.

H.R. Rep. No. 108-66 at 49-20 (2003) (conf. rep.), reprinted in 2003 U.S.C.C.A.N. 683, 684.

8

The lifetime term recommendation contained in Section 5D1.2(c) reflects powerful evidence indicating that recidivism rates for sex offenders do not appreciably decline as offenders age. See H.R. Rep. 107-527, 2003 WL 131168 (discussing lifetime supervised release for sexual offenders). Because, in sex crimes cases, there is no reason to believe that the need for supervision inherently decreases with time, Congress found lifetime supervised release to be appropriate and directly inserted such a recommendation into the Guidelines.[6] In any event, a lifetime term of supervised release is warranted to ensure that defendant does not relapse and again begin sexually abusing children.

Finally, defendant can make a motion to the court after one year pursuant to 18 U.S.C. § 3583(e)(1) to terminate his supervised release. The district court may "terminate a term of supervised release . . . at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." See 18 U.S.C. § 3583(e)(1). Defendant's ability to seek early termination of lifetime supervised release is preferable to imposing a shorter term where defendant's supervision would be automatically terminated even if he posed a danger at that time.

---

[6] The Ninth Circuit has affirmed the propriety of lifetime supervised release for sex offenders. See e.g. United States v. Daniels, 541 F.3d 915 (9th Cir. 2008).

E. <u>CONCLUSION</u>

While representing the United States as a USAID contractor in Bangladesh, defendant ingratiated himself with local boys and their families by buying them gifts and other benefits. He used the victims' trust and sense of indebtedness in order to gratify himself sexually. Defendant took advantage of the boys' youth and innocence, as well as the poverty of their home country. A sentence of 78 months imprisonment is reasonable both under the Sentencing Guidelines and the factors to be considered in imposing sentencing, 18 U.S.C. § 3553(a).

The government requests that the Court order that defendant be:

(1) sentenced to 78 months imprisonment;

(2) placed on supervised release for a term of life under the conditions recommended in the presentence report;

(3) ordered to pay $15,000 restitution due immediately; and

(4) ordered to pay a $100 special assessment.

DATED this 10th day of May, 2010.

ANDRÉ BIROTTE JR.
United States Attorney
DOUGLAS F. McCORMICK
Assistant United States Attorney
Acting Chief, Santa Ana Branch Office

_____/s/_____
ANNE C. GANNON
Assistant United States Attorney

LANNY A. BREUER
Assistant Attorney General
United States Department of Justice
Criminal Division

_____/s/_____
JAMES SILVER
Trial Attorney
Child Exploitation & Obscenity Section

10