**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**HONORABLE ALICEMARIE H. STOTLER, JUDGE PRESIDING**

- - - - - - -

UNITED STATES OF AMERICA, )
Plaintiff, )
vs. ) No. SACR 07-0163-AHS
WILLIAM NEWTON RUDD, )
Defendant. )

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Change of Plea

Santa Ana, California

Friday, October 30, 2009

Jane C.S. Rule, CSR 9316
Federal Official Court Reporter
United States District Court
411 West 4th Street, Room 1-053
Santa Ana, California 92701
(714) 558-7755

09-10-30 Rudd

**APPEARANCES OF COUNSEL:**

On behalf of the PLAINTIFF UNITED STATES OF AMERICA:

DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES ATTORNEY
BY: ANNE GANNON
Assistant United States Attorney
411 W. Fourth Street
Suite 8000
Santa Ana, California 92701
(714) 338-3500

On behalf of DEFENDANT WILLIAM NEWTON RUDD:

OFFICE OF THE FEDERAL PUBLIC DEFENDER
By: LEON PETERSON
Attorney at Law
411 W. Fourth Street
Santa Ana, California 92701
(714) 338-4500

Also Present:

MYESHA BRADEN, Department of Justice

JAMES SILVER, Assistant United States Attorney



**I N D E X**

CHANGE OF PLEA

**SANTA ANA, CALIFORNIA, FRIDAY, OCTOBER 30, 2009**

**(1:35 p.m.)**

THE LAW CLERK: Please remain seated and come to order. This Honorable Court is again in session.

THE CLERK: Calling SACR 07-163-AHS, United States of America v. William Newton Rudd.

Counsel, appearances, please.

MS. GANNON: Good afternoon, your Honor. Anne Gannon on behalf of the United States.

THE COURT: Thank you.

MR. PETERSON: Good afternoon, your Honor. Leon Peterson on behalf of Mr. Rudd, who is present. Should I stand at the lectern, your Honor?

THE COURT: No. I'll ask you to stay seated at counsel table, thank you.

I have this matter on my calendar for a change of plea.

Mr. Rudd, is it your desire to plead guilty pursuant to the plea agreement?

THE DEFENDANT: Yes.

THE COURT: All right. I'll go over it with you, along with the charges, in a moment. But first, let me remind you of the rights that you have in connection with these proceedings.

If you are not able to understand my questions, or

if you need me to repeat something, please let me know as we proceed.

THE DEFENDANT: Can I ask you to speak a little bit louder, please?

THE COURT: I'm doing my best, but unfortunately I have a cold and laryngitis, so it's a little bit hard. Are you able to hear me now?

THE DEFENDANT: Yes.

THE COURT: Okay. First of all, let's go through the rights that you have and what you will ultimately be giving up if you decide to plead guilty.

You have the right to plead not guilty, or having already so pleaded to persist in that plea; do you understand?

THE DEFENDANT: Yes.

THE COURT: You have the right to a jury trial; do you understand?

THE DEFENDANT: Yes.

THE COURT: You have the right to be represented by counsel and, if necessary, have the Court appoint counsel to represent you at trial and at every other stage of the proceedings; do you understand?

THE DEFENDANT: Yes -- yes.

THE COURT: You have the right at a trial to confront and cross-examine adverse witnesses to be protected

from compelled self-incrimination, to give testimony and present your evidence and to compel the attendance of witnesses; do you understand?

THE DEFENDANT: Yes.

THE COURT: You will be waiving or giving up these trial rights if the Court accepts your plea of guilty; do you understand?

THE DEFENDANT: Yes, I do.

THE COURT: The government has the right in a prosecution for perjury, or making a false statement, to use against you any statement you may give under oath, including today's proceedings; do you understand that?

THE DEFENDANT: Yes.

THE COURT: Do you understand the nature of the charge to which you are pleading guilty?

THE DEFENDANT: Excuse me. Yes, I do.

THE COURT: Do you understand the maximum possible penalties, including imprisonment, fine and terms of supervised release?

THE DEFENDANT: Yes.

THE COURT: You understand that the Court has authority to order restitution or repayment to victims?

THE DEFENDANT: Yes.

THE COURT: And the Court is obligated, that is required, to impose a special assessment of $100 per count

of conviction; do you understand?

THE DEFENDANT: Yes.

THE COURT: In coming to a sentence, the Court is obligated to calculate the applicable sentencing guideline range, and under that range, possible departures under the sentencing guidelines and other sentencing factors under the statute 3553(a), and this is a case other than where we have a binding plea agreement. In other words, that is the process the Court goes through to figure your sentence; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And do you understand the terms in your plea agreement to give up the right of appeal and to bring any collateral attack against your sentence?

THE DEFENDANT: Yes.

THE COURT: Have you had enough time to discuss your case completely and thoroughly with your counsel?

THE DEFENDANT: Yes.

THE COURT: And have you had sufficient time to review completely and thoroughly the written plea agreement?

THE DEFENDANT: Yes.

THE COURT: Before I can accept your plea of guilty, I must not only address you personally here in open court as I am doing now, but determine that your guilty plea is made voluntarily and that it does not result from force,

threats or promises, other than promises written out in the plea agreement. Do you, in fact, offer your guilty plea to the charge in the single-count Indictment freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Has anyone forced you or threatened you to make you come forward and plead guilty?

THE DEFENDANT: No.

THE COURT: Have you understood my questions so far?

THE DEFENDANT: Yes, I think so.

THE COURT: When you plead guilty, you are giving up the privilege against self-incrimination, the right to remain silent. My next step is to ask you to be sworn in by the clerk, which means you become a witness, and to answer my questions under oath. You, thereafter, give up the right to remain silent and self-incrimination. Are you able to be sworn in at the present time?

THE DEFENDANT: Yes.

THE COURT: I'll ask -- I'm sorry?

THE DEFENDANT: Yes, sorry.

THE COURT: Yes. Please confer with your counsel at any time you feel it's necessary. Just step away or move away from the microphone to do so, and I'll ask you to rise and face the clerk, raise your right hand to be sworn.

THE CLERK: Do you solemnly swear that the answers you make to the questions asked of you by this Court shall be the truth, the whole truth, and nothing but the truth, so help you God?

THE DEFENDANT: Yes.

THE COURT: You may be seated.

Please state your full, true legal name for me.

THE WITNESS: William Newton Rudd.

THE COURT: And your date of birth?

THE DEFENDANT: March 4th, '43.

THE COURT: And tell me the extent of your formal education.

THE DEFENDANT: I've got a bachelor's degree in biology.

THE COURT: And what kind of work have you done to support yourself?

THE DEFENDANT: I've been working as a -- what do you call it? A contractor, my last job.

THE COURT: And does that mean such as engineering projects?

THE DEFENDANT: Excuse me?

THE COURT: Is that engineering?

THE DEFENDANT: Oh, no, no, I'm sorry. Working for the government on development projects.

THE COURT: All right. Any other line of work

that you have been in?

THE DEFENDANT: I've been in fishery-related work my entire career.

THE COURT: Say that again?

THE DEFENDANT: Fishery related.

THE COURT: Fishery related?

THE DEFENDANT: Fishery, yes.

THE COURT: Tell us what you do.

THE DEFENDANT: I am a shrimp farmer, a buyer, coordinator, marketer.

THE COURT: I understand.

THE DEFENDANT: Primarily a shrimp farmer.

THE COURT: So based upon your experience, your education, what you know about this case, the charge against you, and the confidential conversations you've had with your attorney, are you satisfied that going forward with the plea agreement is in your best interest?

THE DEFENDANT: Yes.

THE COURT: Are you in good health, Mr. Rudd?

THE DEFENDANT: For my age, I probably am.

THE COURT: What medications, if any, do you take?

THE DEFENDANT: I don't take any.

THE COURT: And do you suffer from any disability that prevents you from going forward with your guilty plea?

THE DEFENDANT: Outside of memory loss, no.

THE COURT: And are you under the influence now of anything whatsoever that impairs your judgment?

THE DEFENDANT: No.

THE COURT: Now, you do have before you a copy of the plea agreement, I trust; is that correct?

THE DEFENDANT: Yes, I do.

THE COURT: Excuse me. And you said you've had a chance to read it thoroughly?

THE DEFENDANT: Yes, I have.

THE COURT: And you read, write and speak the English language, obviously, correct?

THE DEFENDANT: Correct.

THE COURT: Then let's go to the page where you signed this plea agreement. I think it's page 21.

THE DEFENDANT: Uh-huh.

THE COURT: And over your signature, you've made the following representation:

"I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms.

"My attorney has advised me of my rights of possible defenses of the sentencing guideline provisions and of the consequences of entering into this agreement. No promises or inducements have been made to me other than

those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement.

"Finally, I am satisfied with the representation of my attorney in this matter."

And that's your signature, is it?

THE DEFENDANT: Yes, it is.

THE COURT: Dated October 16th, 2009?

THE DEFENDANT: Uh-huh.

THE COURT: Is that "yes"?

THE DEFENDANT: Yes, it is.

THE COURT: And I believe on the preceding page, two pages back at paragraph 27, it says, "The parties agree and stipulate that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement has been read into the record of the proceeding."

Is that your intent as well?

THE DEFENDANT: Yes, it is.

THE COURT: And Mr. Peterson, that's your signature also dated October 16?

MR. PETERSON: Yes.

THE COURT: And you were present when your client signed this?

MR. PETERSON: Yes, I was.

THE COURT: Excuse me, thank you. I'll come back

to you with further questions in a while.

Let me now read to you the charges in the Indictment.

This Indictment alleges as follows:

"That on or about November 11, 2003, through on or about May 17, 2004, you, a United States citizen, whose last known address was in Fullerton, California, did travel in foreign commerce to wit Los Angeles, California, to Bangladesh and did engage in illicit sexual conduct of Title 18 of the U.S. Code, Section 2423(f), as in Frank, with JS, a male child under the age of 12 years old."

You understand that's the charge against you?

THE DEFENDANT: Yes, I do.

THE COURT: Let's go back to the front page of this plea agreement wherein it's spelled out that you are pleading guilty to Count One, and on the second page states the nature of the offense, and the following must be true for you to be guilty of the charge:

"That at the time you were a U.S. citizen, that you traveled through a foreign country, that you engaged in illicit sexual conduct as defined by law with another person or persons, and illicit sexual conduct means a sexual act as defined in Section 2246 with a person under 18 years of age that would be in violation of Chapter 109(a) if the sexual act occurred in the territorial jurisdiction of the U.S., or

any commercial sexual act as defined by Section 1591 with a person under age 18."

Do you understand the nature of the offense in what the government would have to prove in order for you to be guilty of this charge?

THE DEFENDANT: Yes.

THE COURT: The maximum penalties provided for by law as set forth in the ensuing paragraph, which includes the possible sentence of 30 years' imprisonment, a lifetime term of supervised release, a fine of $250,000, there is a mandatory special assessment of $100. Knowing what the maximum penalties are provided for by law and knowing what the terms of your plea agreement are, do you so wish to plead guilty to this charge?

THE DEFENDANT: Yes.

THE COURT: Do you understand what supervised release is?

THE DEFENDANT: Yes.

THE COURT: In paragraph 7, you are reminded that a condition of supervised release will be mandatory registration as a sex offender, and that you will be subjected to federal and state registration requirements that could be for up to, and including, a lifetime of registration, and also that notice will be given to certain law enforcement agencies upon your release from confinement

following conviction.

Knowing about supervised release and the conditions that may ensue, including up to registration for life, do you still wish to go forward with your guilty plea?

THE DEFENDANT: Yes.

THE COURT: By pleading guilty, you are giving up valuable government benefits and civic rights; do you understand that?

THE DEFENDANT: Yes, I do.

THE COURT: There may be various collateral consequences that ensue as a result of your conviction, which was spelled out in paragraph 9. Do you understand that collateral consequences will not serve as grounds for you to come to court and ask to withdraw your guilty plea?

THE DEFENDANT: Yes.

THE COURT: In paragraph 10, it states that you will pay full restitution to the best of your ability and financial resources, and you will not avoid restitution in bankruptcy proceedings. And at this time the applicable amount is thought to be $15,000, but this amount could change. Knowing that you may be ordered by the Court as part of your sentence to pay restitution, do you still wish to go forward with your guilty plea?

THE DEFENDANT: Yes.

THE COURT: The factual basis as set forth in

paragraph 11, and I will not go through all of it because it is quite lengthy, but it establishes that you are a United States citizen, that you last resided in Fullerton, California; that during 2002, '3 and '4, you were employed as a contractor for United States Agency for International Development, or USAID, funded development program in Bangladesh. And you obtained a visa in March of 2003 by courier from the embassy of Bangladesh in Washington D.C., and you made entry into that country to work as a contractor on a USAID funded project, and you made several departures into Bangladesh between May 17, 2003 and May of 2004.

Then there is a recitation of the various dates of entry into and departures from Zia, Z-i-a, International Airport at Dhaka, D-h-a-k-a, Bangladesh. The dates are from May 17, 2003 to June of 2004. There is also a footnote that explains what these airlines initials stand for.

On or about June 8 of 2004, the Bangladesh national police executed a search warrant at the hotel where you were staying, and you were found with three young boys, two of whom declared that you had touched their genitalia, but the third child adamantly denied that you ever touched him inappropriately. One of the children, initials JS, described ongoing sexual contact between himself and you occurring intermittently between your travel into and within Bangladesh.

Beginning on or about November 11th, 2003 and continuing until on or about May 17th, 2004, you engaged in illicit sexual conduct as defined by Title 18 of the U.S. Code, Section 2423(f) with JS, a minor person under the age of 18. Among other things, you intentionally touched the unclothed genitalia of JS with the intent to arouse and gratify sexual desires of this child, a minor, or other persons. Following the Indictment in this case, you were arrested in Togo and escorted back into the U.S., first entering the United States at LAX International Airport.

These facts, if true, would support your guilty plea of the charges in the Indictment. Is there anything in the factual basis that you want to correct or remand or change today?

THE DEFENDANT: No.

THE COURT: Now, I come to that part of the plea agreement where you give up the rights that we talked about at the beginning of these proceedings; specifically, by pleading guilty, you give up the right to persist in a plea of not guilty. Is that what you want to do?

THE DEFENDANT: Yes.

THE COURT: You give up the right to a speedy and public trial by a jury?

THE DEFENDANT: Yes.

THE COURT: You give up legal assistance of

counsel at trial?

THE DEFENDANT: Yes.

THE COURT: You understand that there will not be a trial, correct?

THE DEFENDANT: Yes.

THE COURT: Excuse me. Do you wish to give up the right to be presumed innocent and to have the burden of proof placed on the government to prove that you are guilty beyond a reasonable doubt?

THE DEFENDANT: No.

THE COURT: You don't want to give up --

THE DEFENDANT: That's correctly -- I am giving up that right, yes, I am.

THE COURT: Yes, I have to ask you if you understand that you are giving up the right to be presumed innocent.

THE DEFENDANT: Yes.

THE COURT: And you give up that right?

THE DEFENDANT: Yes.

THE COURT: And when you are giving up that right, you are giving up the right to require the government to prove you guilty beyond a reasonable doubt; do you understand that?

THE DEFENDANT: Yes.

THE COURT: And you give up that right as well?

THE DEFENDANT: Yes.

THE COURT: Do you give up your right to confront, that is, question and cross-examine the witnesses who would testify at trial?

THE DEFENDANT: Yes.

THE COURT: Do you give up your right to testify on your own behalf and present evidence in opposition to the charges?

THE DEFENDANT: Yes.

THE COURT: Do you give up your right not to be compelled to testify, knowing that you could choose not to testify, not present any evidence, and that choice cannot be used against you?

THE DEFENDANT: Correct, yes.

THE COURT: When you plead guilty, you give up any and all rights to pursue affirmative defenses, Fourth and Fifth Amendment claims and other pretrial motions that have been or could be filed.

Do you have any questions about what we discussed so far?

THE DEFENDANT: No.

THE COURT: Is there anything you'd like me to go back over that perhaps I jumped over?

THE DEFENDANT: No.

THE COURT: Under the heading of "Sentencing

Factors," you are told that the Court's required to consider the factors in the statute, and after consideration of the sentencing guidelines, that the Court may be free to exercise its discretion to impose any reasonable sentence up to the maximum set by statute of the crime of conviction. This is generally true, but as I read this plea agreement, it's the expectation of you, Mr. Rudd, and your counsel, and government counsel, that the Court will either accept as presented the recommended sentence or reject it and let the party decide if they wish to decide what the Court thinks is a proper sentence. So that's how it's going proceed; that is to say, the next step, if I accept your guilty plea, is to order a presentence report, and I will learn more about you, the background of this offense, and anything that the attorneys place before me for me to formulate what I think would suggest a proper sentence.

If I do not think what's set forth in the plea agreement is suitable and appropriate, I will tell the parties, and everyone can step away from the plea agreement, or the parties can hear why I think the sentence that I come up with is the preferable sentence, whether it's greater or lesser than what's presented in the plea agreement; is that pretty much your understanding?

THE DEFENDANT: Yes.

THE COURT: All right.

Now, the parties have specified in paragraph 14 that the sentencing guidelines are applicable, that if so applied, that they would calculate to offense level 28. And the parties agree that the appropriate disposition would be the set number of months, which is the low end of the offense level 28 with a criminal history category of 1.

Now, looking at paragraph 15, there is obviously the mandatory special assessment of $100. It says up to $15,000 restitution, and that's to be paid at the time of sentencing to the best of your ability to pay consistent with your financial resources. And if you are ordered to pay restitution, you will not be required to pay a fine, but the parties have no agreement as to the length of supervised release. I take it that there are initials here, but I can't make them out.

So Mr. Peterson, can you recite it for me?

MR. PETERSON: Your Honor --

*(Interruption in the proceedings.)*

MR. PETERSON: Your Honor, I repeat that those initials are Mr. Rudd's, BR, in the left, and my own initials LP is circled.

THE COURT: All right.

And Ms. Gannon, you are in agreement that there is no agreement as to the length of supervised release, correct?

MS. GANNON: Yes, your Honor.

THE COURT: I see. Thank you.

I don't recognize William Newton Rudd as having initials BR, so perhaps the first name is Bill?

THE DEFENDANT: Yes, that's what I go by.

THE COURT: What did you say?

THE DEFENDANT: Yes, that is what I go by, is bill.

THE COURT: I see. All right. Thank you.

Yes. It says -- excuse me -- at paragraph 16, "The Court will determine the facts and calculations relevant to sentencing and decide whether to agree to be bound by this agreement. The parties will supplement the facts by supplying relevant information, if necessary, and correct any and all factual misstatements, if necessary."

But paragraph 17 makes it explicit that this is the Rule 11(c)1(c) plea agreement, and so long as there is not a breach by you, Mr. Rudd, or presumably by the government, the parties may withdraw from the plea agreement, and certainly that's the case if the Court refuses to be bound.

So I do not intend to approve the plea agreement today. That is something we will carry over at the time of sentencing, and I will ask the clerk to note in the minutes that the Court's approval of the plea agreement is deferred

until the time of sentencing, so that we have not come to a conclusion in that regard at this point.

Do you have any questions, Mr. Rudd, about what your obligations are, starting here at paragraph 18?

THE DEFENDANT: No questions.

THE COURT: And with respect to the United States' obligations, I had a question of government counsel.

In paragraph 19(b), there is an indication that there will be or maybe a recommendation for the two or three level reduction, and I didn't understand if this meant to achieve an offense level of 28 or in addition from taking down from offense level 28.

MS. GANNON: It would be to achieve level 28, your Honor.

THE COURT: I see. Thank you.

And do you, Mr. Rudd, have any questions about the United States obligations as set forth in the plea agreement?

THE DEFENDANT: No.

THE COURT: There is a limited mutual waiver of appeal and collateral attack. Any questions about those provisions?

THE DEFENDANT: Um -- no questions.

THE COURT: This is the part of the plea agreement that has extensive conditions of supervised release that, in

essence, you are agreeing to because you are not going to have any right at appeal. Do you have any questions of those conditions of supervised release?

THE DEFENDANT: No, I don't.

THE COURT: All right.

I guess we've already discussed on page 18, paragraph 25, where the Court is not a party to the plea agreement and need not accept any of the parties' sentencing recommendations or the parties' stipulations. That's been made clear to you, correct?

THE DEFENDANT: Yes.

THE COURT: At paragraph 26, it says, "As set forth here, there are no promises, understandings or agreements between the U.S. Attorney's Office, the child exploitation and obscenity section, and you or your counsel"; is that true?

THE DEFENDANT: That's true.

THE COURT: Now, let me go back to Mr. Peterson.

Mr. Peterson, you stand by the representation made by your signature, correct?

MR. PETERSON: Yes, your Honor.

THE COURT: And you represent to the Court as counsel that you fully advised Mr. Rudd to the best of your ability in connection with this matter?

MR. PETERSON: Yes, I have.

THE COURT: You discussed with him the nature of the conditional plea he made under Rule 11(c)1(c)?

MR. PETERSON: Yes.

THE COURT: Do you concur in the plea agreement and his guilty plea under the terms of this plea agreement?

MR. PETERSON: I do.

THE COURT: So he proceeds to make his guilty plea with your advice and your consent?

MR. PETERSON: Yes.

THE COURT: Do you believe there is a factual basis for the guilty plea?

MR. PETERSON: Yes, I do.

THE COURT: Based upon your investigation in this matter, do you believe that the factual basis as set forth in the plea agreement is both adequate and accurate?

MR. PETERSON: Yes.

THE COURT: Do you believe that your client proceeds to make his guilty plea voluntarily, understanding the nature of the charge, and the consequences of pleading guilty?

MR. PETERSON: Yes.

THE COURT: Is there anything that you would wish to add at this time?

MR. PETERSON: No, your Honor.

THE COURT: All right.

And Ms. Gannon, are there additional questions of counsel that the government would like to put to the defendant?

MS. GANNON: No, your Honor. Thank you.

THE COURT: Let's turn back to the Indictment, then.

I previously read it to you, Mr. Rudd. Would you like me to read it to you again?

THE DEFENDANT: No, I'm fine.

THE COURT: To the charge of the Indictment that you violated, 18 USC Section 2423(c) -- excuse me -- engaging in illicit sexual conduct in foreign places. How do you plea; guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: I accept the defendant's guilty plea of Count One of the Indictment and ask the clerk to announce the date and time of the return of the investigation report.

THE CLERK: April 19, 2010 at 2:30 p.m.

THE COURT: Mr. Rudd, I'm certain that it's possible to have this presentence report done before that time, and if you would like to have the matter set at an earlier time, that can be arranged. If you agree to this day, however, I'll leave it as April 19th; is that agreeable?

THE DEFENDANT: Yes, it's agreeable.

THE COURT: The government is in agreement as well?

MS. GANNON: Yes, your Honor.

THE COURT: Very well, April 19th, 2010 --

I'm sorry, did you say 2:30?

THE CLERK: Yes, your Honor.

THE COURT: -- at 2:30 p.m. And before we conclude today, I'll enter the following findings in connection with the defendant's guilty plea and also vacate the trial date in this matter.

Mr. Rudd has appeared with his counsel who represents that he, counsel, has conferred with the defendant, and that the defendant is pleading guilty with the advice and consent of counsel.

I've addressed Mr. Rudd directly, personally, and asked him many questions under oath to make sure the guilty plea is made voluntarily with the understanding of the charge and of the consequences of pleading guilty and determine that he is, in fact, guilty as charged.

I have observed Mr. Rudd's demeanor and manner, his obvious understanding of the pleading, his obvious intelligence and attitude in responding to my questions, and I've also discussed the terms of the signed plea agreement with him, and I rely on his representations made with his signature concerning the familiarity of the terms of the

plea agreement.

Based upon the entirety of the foregoing, I conclude and find that Mr. Rudd has made his guilty plea of the charge free of coercive influence, that he made his guilty plea intelligently, that he entered the guilty plea because he did commit this crime and not for other reasons, and the facts show that he is, in fact, guilty as charged.

I also find that based upon the plea agreement and the answers given in open court, the defendant does understand each and all of his constitutional rights, and that he has knowingly, intelligently and voluntarily waived those rights. I, therefore, accept the guilty plea offered today made voluntarily with the understanding of the nature of the charge and the consequences of pleading guilty.

As I just noted, the trial date is vacated, and if the matter is ultimately not accepted by the Court by way of a plea agreement, then the case would be returned to the trial calendar. We will not have a decision on that until April 19th, 2010 at 2:30 p.m.

Is there anything else, Mr. Peterson, you'd wish the Court to take up on behalf of your client?

MR. PETERSON: No, your Honor. Thank you.

THE COURT: And Ms. Gannon, anything further?

MS. GANNON: Your Honor, I just apologize to the Court for the formatting and spacing issues with the plea

agreement. Between Washington and defense counsel, there was some alterations that I didn't want to change from the format that was presented to the defendant when I filed it.

THE COURT: It was unusual, but I figured it was the result of such things, so thank you for clarifying.

MS. GANNON: Thank you, your Honor.

THE COURT: That concludes the proceedings today. We stand adjourned.

THE CLERK: All rise.

This Honorable Court is now adjourned.

*(Court adjourned.)*

-oOo-

-oOo-

**CERTIFICATE**

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: September 9, 2009

____________________________________
JANE C.S. RULE, U.S. COURT REPORTER
CSR NO. 9316